DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Timothy Graulich, Esq.
James I. McClammy, Esq.
David Schiff, Esq.
Joshua Sturm, Esq.

*Counsel to the Foreign Representative*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | **Chapter 15** |
| **Andrade Gutierrez Engenharia S.A.,**[1] | **Case No. 22-11425 (MG)** |
| **Debtors in a Foreign Proceeding** | **(Joint Administration Pending)** |

## MOTION FOR PROVISIONAL RELIEF
## PURSUANT TO 11 U.S.C. §§ 1519, 1521(a)(7), 105(a), AND 362

---

[1] The debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with each Debtor's tax identification or corporate registry number, are: Andrade Gutierrez Engenharia S.A. (Brazil – No. 17.262.213/0001-94) ("AGE"), AG Construções e Serviços S.A. (Brazil – No. 39.469.291/0001-05) ("AGCS"), Andrade Gutierrez Investimentos em Engenharia S.A. (Brazil – No. 17.027.611/0001-26) ("AGIE"), Andrade Gutierrez International S.A. (Brazil – No. 20.253.172/0001-84) ("AGI"), and Zagope Sgps, S.A. (Portugal – No. 507403177) ("Zagope").

# TABLE OF CONTENTS

PAGE

RELIEF REQUESTED ...........................................................................................................1

JURISDICTION .................................................................................................................2

PRELIMINARY STATEMENT AND BACKGROUND ...........................................................3

    A.    Overview .................................................................................................3

    B.    The Debtors' Operations ..........................................................................7

    C.    The Debtors' Relevant Debt Obligations.................................................7

    D.    The Debtors' Assets in the United States .................................................8

BASIS FOR RELIEF REQUESTED .....................................................................................8

    A.    The Provisional Relief is Authorized Under the Bankruptcy Code and the Law of this District .................................................................................8

    B.    The Provisional Relief Meets the Standards for a Preliminary Injunction Under Section 1519(e) ...........................................................12

            1.    The Foreign Representative is Likely to Obtain Recognition of the Foreign Proceeding .........................................................13

            2.    The Debtors are at Risk of Irreparable Harm if the Provisional Request is not Issued.................................................16

            3.    The Balance of Harms Weighs in Favor of Granting the Provisional Relief...........................................................19

            4.    The Public Interest Favors Granting the Requested Injunctive Relief ...........20

    C.    All Parties are Sufficiently Protected........................................................21

    D.    No Security Is Required..............................................................................22

    E.    Requirements of Bankruptcy Rule 1007(a)(4)(B) Should Be Waived ........................23

NOTICE...........................................................................................................................23

NO PRIOR REQUEST ......................................................................................................24

# TABLE OF AUTHORITIES

C̲ᴀsᴇs

P̲ᴀɢᴇ(s)

*In re Alert Holdings, Inc.*,
  148 B.R. 194 (Bankr. S.D.N.Y. 1992) .............................................................. 19

*In re Calpine Corp.*,
  354 B.R. 45 (Bankr. S.D.N.Y. 2006), *aff'd,* 365 B.R. 401 (S.D.N.Y. 2007) ......................... 12, 13, 16

*CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*,
  482 B.R. 96 (Bankr. S.D.N.Y. 2012) .............................................................. 21

*Cunard S.S. Co. v. Salen Reefer Servs. AB*,
  773 F.2d 452 (2d Cir. 1985) ..................................................................... 20

*In re Elpida Memory, Inc.*,
  No. 12-10947 (CSS), 2012 WL 6090194 (Bankr. D. Del. Nov. 20, 2012) ......................... 9

*In re Garcia Avila*,
  296 B.R. 95 (Bankr. S.D.N.Y. 2003) .............................................................. 17

*In re Gercke*,
  122 B.R. 621 (Bankr. D.D.C. 1991) ............................................................. 11, 19

*In re Hanjin Shipping Co.*,
  No. 16-27041 (JKS), 2016 WL 6679487 (Bankr. D.N.J. Sept. 20, 2016) ......................... 9

*In re Innua Canada Ltd.*,
  No. 09-16362 (DHS), 2009 WL 1025088 (Bankr. D.N.J. Mar. 25, 2009) ......................... 12

*Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In re Lyondell Chem. Co.)*,
  402 B.R. 571 (Bankr. S.D.N.Y. 2009) ........................................................... 12, 16

*MF Global Holdings Ltd. v. Allied World Assur. Co. (In re MF Glob. Holdings Ltd.)*,
  562 B.R. 55 (Bankr. S.D.N.Y. 2017) .............................................................. 13

*In re MMG LLC*,
  256 B.R. 544 (Bankr. S.D.N.Y. 2000) ............................................................. 11

*Moyal v. Münsterland Gruppe GmbH & Co. KG*,
  539 F. Supp. 3d 305 (S.D.N.Y. 2021) ............................................................. 21

*In re Netia Holdings S.A.*,
  278 B.R. 344 (Bankr. S.D.N.Y. 2002) ............................................................. 17

*In re OAS S.A.*,
  533 B.R. 83 (Bankr. S.D.N.Y. 2015) .............................................................. 10

*In re Pro-Fit Holdings Ltd.*,
    391 B.R. 850 (Bankr. C.D. Cal. 2008) ....................................................................... 12

*In re Ran*,
    607 F.3d 1017 (5th Cir. 2010) ...................................................................................... 9

*In re Rede Energia S.A.*,
    515 B.R. 69 (Bankr. S.D.N.Y 2014) ............................................................................ 21

*Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l. Arms, Inc.*,
    466 F.3d 88 (2nd Cir. 2006) ......................................................................................... 21

*In re SPhinX, Ltd.*,
    351 B.R. 103 (Bankr. S.D.N.Y 2006) .......................................................................... 21

*In re Toft*,
    453 B.R. 186 (Bankr. S.D.N.Y. 2011) .......................................................................... 21

*Vitro v. ACP Master, Ltd. (In re Vitro)*,
    455 B.R. 571 (Bankr. N.D. Tex. 2011) ........................................................................ 12

<u>S</u><u>TATUTES</u> & <u>R</u><u>ULES</u>

11 U.S.C. § 101(23) ............................................................................................................ 14

11 U.S.C. § 101(24) ............................................................................................................ 14

11 U.S.C. § 103(a) ............................................................................................................... 9

11 U.S.C. § 105(a) ............................................................................................................ 1, 9

11 U.S.C. § 304 ............................................................................................................ 19, 20

11 U.S.C. § 361 ................................................................................................................... 12

11 U.S.C. § 362 .......................................................................................................... *passim*

11 U.S.C. § 362(d) .............................................................................................................. 19

11 U.S.C. § 1501 ................................................................................................................... 2

11 U.S.C. § 1501(a) ...................................................................................................... 10, 20

11 U.S.C. § 1502(4) ............................................................................................................ 14

11 U.S.C. § 1502(5) ............................................................................................................ 15

11 U.S.C. § 1515 ................................................................................................................. 14

11 U.S.C. § 1519 ........................................................................................................ *passim*

11 U.S.C. § 1519(a) .................................................................................................. 8, 9, 10

11 U.S.C. § 1519(a)(1) ...................................................................................................... 9

11 U.S.C. § 1519(a)(2) ...................................................................................................... 9

11 U.S.C. § 1519(a)(3) ...................................................................................................... 9

11 U.S.C. § 1519(e) ......................................................................................................... 12

11 U.S.C. § 1520(a) ........................................................................................................... 8

11 U.S.C. § 1520(a)(1) ..................................................................................................... 23

11 U.S.C. § 1521 ................................................................................................................ 9

11 U.S.C. § 1521(a) ..................................................................................................... 8, 15

11 U.S.C. § 1521(a)(1) ....................................................................................................... 8

11 U.S.C. § 1521(a)(2) ....................................................................................................... 8

11 U.S.C. § 1521(a)(7) .................................................................................................... 1, 9

11 U.S.C. § 1522(a) ......................................................................................................... 22

11 U.S.C. § 1525 ............................................................................................................. 20

28 U.S.C. § 157 ................................................................................................................. 2

28 U.S.C. § 157(b)(2)(P) .................................................................................................... 2

28 U.S.C. § 1334 ............................................................................................................... 2

28 U.S.C. § 1409(a) ........................................................................................................... 2

28 U.S.C. § 1410 ............................................................................................................... 2

Bankr. R. 1007(a)(4)(B) ................................................................................................ 1, 23

Bankr. R. 2002(q) ............................................................................................................ 23

Bankr. R. 7065 ................................................................................................................. 23

Fed. R. Civ. P. 65(c) ........................................................................................................ 23

N.Y. C.P.L.R. § 5222 ....................................................................................................... 18

N.Y. C.P.L.R. § 5222(b) ................................................................................................... 18

N.Y. C.P.L.R. § 6203 ....................................................................................................... 18

N.Y. C.P.L.R. § 6211(a) ................................................................................................... 18

OTHER AUTHORITIES

*Amended Standing Order of Reference* dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.) .................... 2

H.R. Rep. No. 109-31, pt. 1 (2005)............................................................................................................ 21

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Gustavo Braga Mercher Coutinho (the "Foreign Representative")[2], the authorized foreign representative in respect of the *recuperação extrajudicial* proceeding (the "Brazilian EJ Proceeding") of Andrade Gutierrez Engenharia S.A. ("AGE") and its affiliated debtors, AG Construções e Serviços S.A. ("AGCS"), Andrade Gutierrez Investimentos em Engenharia S.A. ("AGIE"), Andrade Gutierrez International S.A. ("AGI"), and Zagope Sgps, S.A. ("Zagope") (collectively, the "Debtors") in the 1st Corporate Court of the Judicial Venue of Belo Horizonte (the "Brazilian Court") pursuant to Brazilian Federal Law No. 11,101 of February 9, 2005 (as amended, the "Brazilian Bankruptcy Law"), of the laws of the Federative Republic of Brazil ("Brazil"), by and through the undersigned counsel, respectfully submits this motion (this "Motion") and represents as follows:

## RELIEF REQUESTED

1. Pursuant to this Motion, the Foreign Representative respectfully requests, pursuant to sections 1519, 1521(a)(7), 105(a), and 362 of title 11 of the United States Code (the "Bankruptcy Code"), entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order") granting the following provisional relief pending final determination on the pending *Motion for (I) Recognition of Foreign Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Motion for Recognition"): (a) providing that section 362 of the Bankruptcy Code applies with respect to the Debtors and their property within the territorial jurisdiction of the United States; (b) waiving compliance with Bankruptcy Rule 1007(a)(4)(B); and (c) granting such other and further relief as

---

[2] Capitalized terms used but not defined herein shall have the meaning given to such terms in the Motion for Recognition or Foreign Law Declaration (as defined below), as applicable.

the Court deems just and proper (together, the "Provisional Relief").  The relief requested in this Motion is without prejudice to any additional relief the Foreign Representative may request.

2.      In support of this Motion, the Foreign Representative refers the Court to the statements contained in: (a) the *Declaration of Gustavo Coutinho in Support of the Motion for (I) Recognition of Foreign Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code and Additional First Day Filings* (the "Foreign Representative Declaration"); (b) the *Declaration of Eduardo Augusto Mattar in Support of the Motion for (I) Recognition of Foreign Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code and Additional First Day Filings* (the "Foreign Law Declaration" and, together with the Foreign Representative Declaration and the Motion for Recognition, the "Supporting Documents"); and (c) the Motion for Recognition, which have been filed with the United States Bankruptcy Court for the Southern District of New York (the "Court") and are incorporated herein by reference.

## JURISDICTION

3.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code, as well as the *Amended Standing Order of Reference* dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1409(a) and 1410.

## PRELIMINARY STATEMENT AND BACKGROUND[3]

**A.     Overview**

4.      On September 29, 2022, the Debtors filed the Brazilian EJ Proceeding with the Brazilian Court.  Foreign Rep. Decl. ¶ 3.  On October 5, 2022, the Brazilian Court entered an order formally accepting the Debtors into the Brazilian EJ Proceeding (the "Initial Court Order"). *Id.* ¶ 44.

5.      The Brazilian EJ Proceeding seeks confirmation of a consensual restructuring transaction reflected in a Brazilian restructuring plan (the "EJ Plan") that is already on file with the Brazilian Court, and has been signed and supported by the holders of a majority of the Notes—the requisite majority required under Brazilian law.  Foreign Law Decl. ¶ 20.  That EJ Plan, and the transactions contemplated thereby, are designed to preserve the Debtors' going-concern value and provide the Debtors with additional liquidity runway.  Foreign Rep Decl. ¶¶ 29, 53.

6.      Under Brazilian Bankruptcy Law, the filing of the Brazilian EJ Proceeding triggered an initial automatic stay (lasting no less than 180 days) applicable to all claims subject to the Brazilian EJ Proceeding, including all claims for default or non-payment of the Notes (the "Brazilian EJ Stay").  Foreign Law Decl. ¶ 19.  The Initial Court Order ratified the Brazilian EJ Stay.  *Id.* ¶¶ 20, 45.  It is the Foreign Representative's understanding that absent the commencement of a case under chapter 15 of the Bankruptcy Code, the 2021 Trustee, defined below, would vigorously contest the application of the Brazilian EJ Stay to the litigation it has commenced in the United States, and seek reimbursement for fees it incurs in presenting such

---

[3] The Foreign Representative respectfully refers the Court to the Motion for Recognition for a full background discussion of the Debtors, including its operations and debt structure and the events precipitating the Brazilian EJ Proceeding and these Chapter 15 Cases.

arguments. Foreign Rep Decl. ¶ 76. As a result, the Motion for Recognition also explicitly seeks a stay of proceedings in the United States and for the entrustment of the Debtors' property in the United States to the Foreign Representative. Briefing on a motion for summary judgment concluded on March 3, 2022, and it is possible that the New York Trial Court would proceed promptly to a ruling, which might result in the issuance of a judgment. *Id.* ¶ 33.

7.      As noted above, there is a suit (the "Trustee Litigation") pending against the Debtors, which was filed by UMB Bank N.A., as trustee for a portion of the Notes subject to the Brazilian EJ Proceeding (the "2021 Trustee") in the Supreme Court of the State of New York (the "New York Trial Court"). *Id.* As set forth in greater detail in the Foreign Representative Declaration, the Trustee Litigation is a debt enforcement proceeding arising as a result of the nonpayment of the 2021 Notes. *Id.* At times, the Trustee Litigation has been stayed by court order pursuant to the mutual agreement of the parties. *Id.* However, the most recent stay of such proceedings expired on September 30, 2022. *Id.* The New York Trial Court has not ordered any further stay of proceedings, so the matter is currently unstayed. *Id.*

8.      The Debtors' September 30 Statement (as defined below) requested that, in light of the filing of the Brazilian EJ Proceeding, the onset of the Brazilian EJ Stay, and the intent to commence the Chapter 15 Cases as a condition to ultimately consummating the Debtors' restructuring, the New York Trial Court (a) refrain from further proceedings at that time and (b) grant comity to the Brazilian Court with respect to the initial automatic stay triggered by the filing of the Brazilian EJ Proceeding until it is recognized in the United States.[4] *Id* ¶ 34. On October 18, 2022, the 2021 Trustee responded, indicating that it would be in a position to advise

---

[4] *See UMB Bank N.A. v. Andrade Gutierrez International S.A., Andrade Gutierrez Engenharia S.A., Andrade Gutierrez Investimentos em Engenharia S.A., AG Construções e Serviços, and Zagope SGPS, S.A.*, Case No. 656296/2021 (N.Y. Sup. Ct. Sept. 30, 2022) (ECF No. 30) (the "September 30 Statement").

the New York Trial Court as to whether it intends to move forward with the Trustee Litigation (and whether it believes further briefing would be necessary) once the deadline to file objections to the EJ Plan expired on November 9, 2022.[5]  *Id.*  Nevertheless, on October 20, 2022, the New York Trial Court directed briefing from the parties due by November 4.  *Id.*  Since this direction for further briefing, counsel to the Debtors and the 2021 Trustee have engaged in constructive discussions, and on the basis of those discussions, the Debtors and the Foreign Representative determined to commence these Chapter 15 Cases to avoid the continuation of contested proceedings before the New York Trial Court at this time.  *Id.*  On October 28, 2022, the Debtors and the 2021 Trustee wrote a letter to the New York Trial Court advising the court that the parties entered a joint-stipulation to adjourn the November 4, 2022 supplemental briefing deadline to November 30, 2022, subject to the New York Trial Court's approval.[6]  *Id.*  As of the date hereof, the New York Trial Court has not approved that stipulated extension so briefing remains due this coming Friday, November 4.  *Id.*  The Foreign Representative has also shared drafts of certain of the First Day Filings, including this Motion, with counsel to the 2021 Trustee. *Id.* ¶ 78.  The Foreign Representative understands that, at this time, the 2021 Trustee does not intend to oppose this Motion (or recognition of the Brazilian EJ Proceeding in the United States) absent direction from the 2021 Noteholders.  *Id.*

9.      If the Trustee Litigation were permitted to go forward, the Debtors could face a judgment in this action as well as efforts to impose post-judgment remedies in the near term.  *Id.* ¶ 35.  Indeed, if the relief requested is not granted, the Debtors and the 2021 Trustee would have

---

[5] *See UMB Bank N.A. v. Andrade Gutierrez International S.A., Andrade Gutierrez Engenharia S.A., Andrade Gutierrez Investimentos em Engenharia S.A., AG Construções e Serviços, and Zagope SGPS, S.A.*, Case No. 656296/2021 (N.Y. Sup. Ct. Oct. 18, 2022) (ECF No. 32)

[6] *See UMB Bank N.A. v. Andrade Gutierrez International S.A., Andrade Gutierrez Engenharia S.A., Andrade Gutierrez Investimentos em Engenharia S.A., AG Construções e Serviços, and Zagope SGPS, S.A.*, Case No. 656296/2021 (N.Y. Sup. Ct. Oct. 28, 2022) (ECF Nos. 33; 34).

to incur the expense of briefing complex issues and potentially engaging in further contested proceedings before the New York Trial Court, in connection with litigation that is nevertheless likely to be stayed in the near term by an order in these Chapter 15 Cases granting recognition of the Brazilian EJ Proceeding. *Id.* Moreover, if the New York Trial Court rules on the 2021 Trustee's motion for summary judgment in the interim, it is possible that the Debtors could face efforts to enforce the judgment before the Motion for Recognition is heard on regular notice, and before a stay would be imposed by the Court in connection therewith (and in the event that the Court, in fact, grants the Motion for Recognition). *Id.*

10. If the Trustee Litigation goes forward, or if any other creditors in the United States commence or continue actions to prosecute claims of the type stayed by the Brazilian EJ Proceeding, the Debtors will face the risk of irreparable harm. *Id.* ¶ 71. This is so both because such litigation could have a destabilizing effect on the Brazilian EJ Proceeding and because adverse creditor actions could go forward in the absence of the Provisional Relief, and prevent the consummation of the EJ Plan or result in its early termination. Specifically, pursuant to Section 11.2 of the proposed EJ Plan, the EJ Plan could be subject to early termination in accordance with its terms if (among other things) an adversary proceeding or other enforcement action in the United States results in a court, administrative, or arbitration decision that prevents the implementation of any material measures provided for in the EJ Plan. *Id.* In the case of the Trustee Litigation in particular, further proceedings could also quickly lead to attachment of the Debtors' property. *Id.* ¶ 77. Moreover, continued litigation and a "race to judgment" by select creditors threatens the orderly and equitable process for restructuring claims in the Brazilian EJ Proceeding. *Id.* ¶¶ 71, 79. In light of the need to avoid this irreparable harm and to aid the Debtors' restructuring, the Foreign Representative seeks the provisional application of the

automatic stay under section 362 of the Bankruptcy Code to maintain the *status quo*, pending a ruling on the Motion for Recognition.

**B. The Debtors' Operations**

11.     The Debtors, along with other related entities and affiliates (the "AG Group"), are part of a larger Brazilian corporate group. *Id.* ¶ 6. The AG Group is one of the largest engineering and heavy construction companies in Brazil and Latin America. *Id.* As of the EJ Petition Date, the Debtors directly employed approximately 1,657 employees, all of whom are based in Brazil, and the broader AG Group (including the Debtors) directly and indirectly employed approximately 13,200 employees worldwide, with approximately 89% of such employees based in Brazil. *Id.* The AG Group (including the Debtors) is overseen by corporate management in Brazil. *Id.* ¶ 9.

**C. The Debtors' Relevant Debt Obligations**

12.     The Debtors' outstanding funded indebtedness consists of approximately (a) US$315 million in aggregate principal amount of 9.500% senior secured notes due 2024 issued by AGI and guaranteed by AGE, AGIE, AGCS, and Zagope pursuant to the terms and conditions of the 2024 Indenture (the "2024 Notes") and (b) US$43 million in aggregate principal amount of 11.00% senior secured PIK toggle notes due 2021 issued by AGI and guaranteed by AGE, AGIE, AGCS, and Zagope pursuant to the terms and conditions of the 2021 Indenture (the "2021 Notes" and, together with the 2024 Notes, the "Notes" and, holders of the Notes, the "Noteholders"). *Id.* ¶ 21. Certain of the Debtors are also party to ordinary course working capital and equipment leasing arrangements, which are not subject to the Brazilian EJ Proceeding or the EJ Plan. *Id.*

**D. The Debtors' Assets in the United States**

13. The Debtors own a series of U.S. bank accounts (collectively, the "U.S. Bank Accounts") located in Manhattan, New York. *Id.* ¶ 56. The Debtors periodically receive payments through the U.S. Bank Accounts in the ordinary course of business. *Id.* Additionally, the Indentures are governed by New York law and contain provisions submitting the parties to the jurisdiction of New York state and federal courts. *Id.* Moreover, upon information and belief, certain holders of the Notes have headquarters or significant operations in the borough of Manhattan. *Id.* ¶ 57.

**BASIS FOR RELIEF REQUESTED**

**A. The Provisional Relief is Authorized Under the Bankruptcy Code and the Law of this District**

14. Upon recognition of a foreign main proceeding, the automatic stay under section 362 of the Bankruptcy Code applies to protect debtors from, among other things, commencement or continuation of any claims and enforcement of a judgment with respect to the debtors and property of the debtors in the territorial jurisdiction of the United States. *See* 11 U.S.C. §§ 362, 1520(a). In addition to these protections, upon recognition of a foreign nonmain proceeding, a foreign representative may request additional "appropriate relief" pursuant to section 1521(a) of the Bankruptcy Code, including (without limitation) the continued application of the section 362 stay with respect to any Debtor and its property within the territorial jurisdiction of the United States. *See* 11 U.S.C. §§ 1521(a)(1) and (2).

15. Although the automatic stay under section 362 is not automatically triggered by the commencement of a chapter 15 case, section 1519(a) of the Bankruptcy Code provides the Court with broad discretion to grant provisional relief during the gap period between the filing of a chapter 15 petition and the Court's ruling on that petition when it is "urgently needed to protect

the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a). Specifically, section 1519(a)(1) expressly empowers the Court to issue a provisional order "staying execution against the debtor's assets." 11 U.S.C. § 1519(a)(1). Additionally, section 1519(a)(3) of the Bankruptcy Code incorporates section 1521(a)(7), which permits the Court to grant (with certain exceptions not applicable here) "any additional relief that may be available to a trustee" when necessary to "effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. §§ 1519(a)(3), 1521(a)(7). Because relief under section 362 is available to a trustee in a plenary proceeding, such relief is available to a foreign representative under section 1521(a)(7), and therefore may be granted on a provisional basis under section 1519(a)(3). Under both sections 1519 and 1521 of the Bankruptcy Code, the Court has broad discretion to grant the requested relief. *In re Hanjin Shipping Co., Ltd.*, No. 16-27041 (JKS), 2016 WL 6679487, at *5 (Bankr. D.N.J. Sept. 20, 2016); *In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *3 (Bankr. D. Del. Nov. 20, 2012).[7] Moreover, the Court may also look to section 105(a) of the Bankruptcy Code as a separate basis for fashioning provisional relief as is necessary to protect a chapter 15 debtor and its creditors.[8] In short, sections 105(a), 1519(a), and 1521 allow the Court to enter relief of the kind requested in this

---

[7] The Court's authority to grant provisional relief is not limited to the remedies specified in section 1519(a). *See*, *e.g*., *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010) (Sections 1519(a)(1)-(3) represent a "non-exhaustive list of relief available to a foreign proceeding's representative in a Chapter 15 case"). Additionally, section 105(a), which permits this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," provides the Court with a separate basis for granting provisional relief in these Chapter 15 Cases. 11 U.S.C. § 105(a). Section 105(a) is made applicable in chapter 15 cases by section 103(a) of the Bankruptcy Code. 11 U.S.C. § 103(a). Under both sections 1519(a) and 105(a), the Court has discretion to grant the Provisional Relief in these Chapter 15 Cases.

[8] Section 105(a) of the Bankruptcy Code, which allows this Court to, among other things, "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," is made applicable in chapter 15 cases by section 103(a) of the Bankruptcy Code. *See* 11 U.S.C. § 103(a) (applying chapter 1 to proceedings under chapter 15).

Motion to protect the Debtors and their assets and promote judicial cooperation in cross-border insolvency cases. *See* 11 U.S.C. § 1501(a).

16. Here, the Provisional Relief requested by the Foreign Representative falls squarely within the scope of relief available under section 1519(a) of the Bankruptcy Code, as such relief is urgently needed to protect the Debtors' assets and the interests of their creditors as a whole from a real and present risk. Foreign Rep. Decl. ¶ 76. The Trustee Litigation is significantly progressed and currently unstayed, such that the New York Trial Court could enter a judgment in the near term. *Id.* The fact that the New York Trial Court directed briefing on the stay issue raised in the Debtors' September 30 Statement and the 2021 Trustee Response by November 4, 2022, and declined to wait for a further indication from the 2021 Trustee following the occurrence of the November 9 objection deadline in the Brazilian EJ Proceeding, suggests that there is a material chance that a ruling could be entered in the near term. Thereafter, absent the granting of a provisional stay, the 2021 Trustee could potentially seek to attach, setoff, or otherwise seize the Debtors' assets prior to a hearing on recognition of the Brazilian EJ Proceeding. Indeed, there is precedent for such an occurrence—for example, in *In re OAS S.A.*, certain bondholders petitioned for and obtained an attachment order against the OAS Group both before and during their chapter 15 cases. *See* 533 B.R. 83, 89 (Bankr. S.D.N.Y. 2015) (noting that certain holders of New York law-governed bonds issued by a Brazilian company had "sought and obtained an ex parte order of attachment" in state court). Moreover, other parties could also engage in a race to the United States courthouse in a manner that further undermines the Brazilian EJ Proceeding and the Debtors' restructuring efforts. Absent the relief sought hereby, the existence of the Brazilian EJ Stay may also increase the risk that the Debtors'

creditors commence litigation in the United States, as they can clearly no longer do so in the Debtors' home jurisdiction.

17.     In these circumstances, the Foreign Representative is in urgent need of the Provisional Relief to protect the interests of the Debtors.  The Provisional Relief will (a) protect against the entry of a judgment and any resulting attachment in the Trustee Litigation, (b) avoid disruption in the orderly and equitable process in the Brazilian EJ Proceeding (for the benefit of the Debtors and all creditors), and (c) protect against the undue drain on time, money, attention, and other resources that may result if litigation continues in the United States.  *Id.* ¶ 80.  Indeed, further litigation in the United States would be costly and "[divert] funds needed for the purpose of maximizing value" for the equitable benefit of the Debtors' creditors.  *In re Gercke*, 122 B.R. 621, 626 (Bankr. D.D.C. 1991); *cf In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) (noting that "forc[ing a foreign representative] to participate in expensive litigation that threatens to drain the assets of the estate" may result in irreparable harm).

18.     Bankruptcy courts in this district have routinely imposed the automatic stay on a provisional basis or ordered similar relief pending the court's decision on the recognition petition, including in situations less urgent than this one.  *See, e.g., In re Samarco Mineração S.A. - Em Recuperação Judicial*, No. 21-10754 (LBG) (Bankr. S.D.N.Y. Apr. 22, 2021) (provisionally granting the stay under section 362 of the Bankruptcy Code with respect to the debtor and its U.S. assets); *In re Serviços de Petróleo Constellation S.A.*, No. 18-13952 (MG) (Bankr. S.D.N.Y. Dec. 11, 2018) (ECF No. 29) (same); *In re Ocean Rig UDW INC.*, No. 17-10736 (MG) (Bankr. S.D.N.Y. Apr. 7, 2017) (ECF No. 41) (same); *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016) (ECF No. 22) (same); *In re NewSat Ltd.*, No. 15-10810 (LSS) (Bankr. D. Del. May 1, 2015) (ECF No. 80) (provisionally granting application of section 362 "in its

entirety"); *In re OAS S.A.*, No. 15-10937 (SMB) (Bankr. S.D.N.Y. Apr. 30, 2015) (ECF No. 33) (granting temporary injunction against adverse creditor actions); *In re Japan Airlines Corp.*, No. 10-10198 (JMP) (Bankr. S.D.N.Y. Jan. 19, 2010) (ECF No. 25) (granting protections of sections 361 and 362 pending entry of further order). In light of the foregoing, the Foreign Representative respectfully submits that granting the Provisional Relief pending the Court's ruling on the Motion for Recognition is both necessary and appropriate in these Chapter 15 Cases.

**B.  The Provisional Relief Meets the Standards for a Preliminary Injunction Under Section 1519(e)**

19.    Section 1519(e) of the Bankruptcy Code provides that "[t]he standards, procedures, and limitations applicable to an injunction shall apply to [a request for provisional] relief under this section." 11 U.S.C. § 1519(e); *see also Vitro v. ACP Master, Ltd. (In re Vitro)*, 455 B.R. 571, 580 (Bankr. N.D. Tex. 2011) ("Injunctions issued under § 105 outside of a plan of reorganization may be granted only 'under the usual rules for the issuance of an injunction.'") (citation omitted).[9]

20.    In the context of a chapter 15 proceeding, a preliminary injunction is warranted when (a) there is a likelihood of success on the merits (*i.e.,* the request for recognition); (b) there is "an imminent irreparable harm" to the debtor if the preliminary injunction is not issued; (c) "the balance of harms tips in favor of the moving party"; and (d) "the public interest weighs in favor of an injunction." *Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 588-89 (Bankr. S.D.N.Y. 2009); *see also In re Innua Canada Ltd.*, No. 09-16362 (DHS), 2009 WL 1025088, at *3 (Bankr. D.N.J. Mar. 25, 2009); *In re Calpine*

---

[9] *But see In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 855 (Bankr. C.D. Cal. 2008) (holding that the standards, procedures, and limitations for issuing an injunction should not apply to relief under section 1519 when the relief sought is the imposition of the automatic stay on an interim basis).

*Corp.*, 354 B.R. 45, 48-50 (Bankr. S.D.N.Y. 2006), *aff'd.* 365 B.R. 401 (S.D.N.Y. 2007). In the alternative, a preliminary injunction is appropriate where the movant can "show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *MF Global Holdings Ltd. v. Allied World Assur. Co. (In re MF Glob. Holdings Ltd.)*, 562 B.R. 55, 64 (Bankr. S.D.N.Y. 2017) (citation omitted). In evaluating these factors, "no one factor is determinative," and courts take a "flexible approach." *In re Calpine Corp.*, 365 B.R. at 409 (citation omitted). Here, the Foreign Representative's request for the Provisional Relief meets each of the above-mentioned factors.

> ### *1. The Foreign Representative is Likely to Obtain Recognition of the Foreign Proceeding*

21. In the context of chapter 15, establishing a "likelihood of success on the merits" requires a petitioner to demonstrate that recognition of the underlying foreign proceeding is likely. *See In re Ocean Rig UDW INC.*, No. 17-10736 (MG) (Bankr. S.D.N.Y. Apr. 7, 2017) (ECF No. 41) at 3 (concluding that "the [p]etitioners have demonstrated a likelihood of success on the merits of the Petitions for Recognition."); *see also In re Lupatech*, No. 14-11559 (SMB) (Bankr. S.D.N.Y. May 28, 2014) (ECF No. 15) at 3 (finding that the petitioner demonstrated "a substantial likelihood of success on the merits that . . . all statutory elements for recognition of the Foreign Proceeding are satisfied"). Notably, this standard has been interpreted to apply to recognition of both main and nonmain foreign proceedings in the context of an order granting provisional relief. *See, e.g., Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016) (ECF No. 22) ¶ G ("[T]he Court concludes that the Petitioner has demonstrated a likelihood that Petitioner will be able to demonstrate that the Brazilian RJ Proceeding is . . . either a foreign main proceeding or foreign nonmain proceeding . . . .").

22.     As set forth in the Motion for Recognition, the Foreign Representative has demonstrated that all of the statutory elements under section 1517(a) of the Bankruptcy Code for recognition of the Brazilian EJ Proceeding with respect to each of the Debtors as a foreign main proceeding have been satisfied (and has also set forth ample basis on which the Brazilian EJ Proceeding can be recognized, in the alternative, as a foreign nonmain proceeding).  Motion for Recognition ¶¶ 86-108.  Among other things, the Foreign Representative has demonstrated that: (a) the Brazilian EJ Proceeding constitutes a "foreign proceeding," as defined under section 101(23) of the Bankruptcy Code, with respect to each of the Debtors,[10] see *Id.* ¶¶ 59-64; (b) the Foreign Representative is the duly-authorized foreign representative within the meaning of section 101(24) of the Bankruptcy Code for purposes of these Chapter 15 Cases, see *id.* ¶¶ 65-66; and (c) the Motion for Recognition and accompanying documents satisfy the procedural requirements of section 1515 of the Bankruptcy Code, see *id.* ¶¶ 67-71.

23.     The Foreign Representative has also sufficiently demonstrated that the Brazilian EJ Proceeding is the "foreign main proceeding" (as defined in section 1502(4) of the Bankruptcy Code) of each of the Debtors.  Among other factors, and as described in detail in the Motion for Recognition, the Debtors are part of a Brazilian corporate group that is highly integrated, complex, and operationally centered in Brazil—the focal point of the majority of its customers and operations and its center of main interests ("COMI").  *See id.* ¶¶ 86-101.

24.     Further, although the Foreign Representative is confident that the Debtors' COMI is in Brazil, the Foreign Representative has also demonstrated in the alternative that, in the event the Court were to determine that any of the Debtors' COMI is outside Brazil, there is still ample

---

[10] Notably, U.S. courts considering the question of recognition of Brazilian EJ proceedings have routinely held it constitutes a foreign proceeding for purposes of the Bankruptcy Code. *See* Motion for Recognition. ¶ 64 (collecting cases).

basis for the Court to recognize the Brazilian EJ Proceeding as a "foreign nonmain proceeding" with respect to any of the Debtors under section 1502(5) of the Bankruptcy Code. Specifically, the Debtors all partake in extensive, nontransitory economic activity located in Brazil (which is the location of their collective employees and operations, their primary source of revenue, and the location of the Court administering the Brazilian EJ Proceeding) and, accordingly, have at least an "establishment" in Brazil. *Id.* ¶¶ 94-101, 108. As such, each of the Debtors has an "establishment" located in Brazil for purposes of chapter 15 recognition, and the Brazilian EJ Proceeding at least qualifies as a foreign nonmain proceeding with respect to any Debtor for which the Court declines to recognize the Brazilian EJ Proceeding as a foreign main proceeding. *Id.* ¶ 108.

25. As also set forth in the Motion for Recognition, in the event that the Brazilian EJ Proceeding is recognized as a foreign nonmain proceeding with respect to any Debtor, the Foreign Representative has demonstrated ample basis for the Court to grant discretionary relief staying actions in the United States against the Debtors and their property pursuant to section 1521(a) of the Bankruptcy Code. Among other reasons, any prejudice to creditors caused by the requested discretionary relief is limited; while in contrast, failure to grant a stay would cause tremendous harm to the Debtors and their stakeholders. For example, interested parties will have the ability to participate in the Brazilian EJ Proceeding and have their claims treated the same as other similarly situated creditors. Foreign Law Decl. ¶¶ 47-48. Indeed, creditors' rights to be heard in the Brazilian EJ Proceeding (and in the Chapter 15 Cases) will be unaffected. On the other hand, if such relief is not granted, the Debtors may be at risk to adverse creditor action (including the continuation of the Trustee Litigation) that could threaten their ability to effectuate a reorganization that the Debtors and stakeholders have spent considerable time and resources on

structuring and implementing. The balance of potential harms thus weighs heavily in favor of granting the discretionary relief requested, and the Foreign Representative is therefore likely to obtain the requested relief.

26. Given the strong likelihood that the Court will recognize the Brazilian EJ Proceeding as the foreign main proceeding with respect to each Debtor (or, in the alternative, will grant recognition as a foreign nonmain proceeding and approve a discretionary stay), the Foreign Representative has met the "substantial likelihood of success" prong.

### 2. The Debtors are at Risk of Irreparable Harm if the Provisional Request is not Issued

27. As noted above, absent a grant of provisional relief, adverse creditor actions could go forward and prevent the consummation of the EJ Plan or result in its early termination. Courts have also held that a general risk of interference with the reorganization process presents "irreparable harm" to the debtor. *See In re Calpine Corp.*, 365 B.R. at 409-10 (holding "preliminary injunction in the bankruptcy context [may be granted] where the action to be enjoined is one that threatens the reorganization process") (citation omitted); *In re Lyondell Chem. Co.*, 402 B.R. at 590 (same).

28. In the cross-border insolvency context, courts have recognized that irreparable harm exists when local actions could hinder the orderly process of a foreign proceeding and the goal of fair distribution of assets. *See In re Berau Capital Res. PTE Ltd.*, No. 15-11804 (MG) (Bankr. S.D.N.Y. Aug. 6, 2015) (ECF No. 20) at 3 (granting provisional relief recognizing the risks of, among other things, interference with the foreign debtor's "efforts to administer its estate and restructure its operations pursuant to the [f]oreign [p]roceeding" and "undermining the [f]oreign [r]epresentative's efforts to achieve an equitable result for the benefit of all of the [f]oreign [d]ebtor's creditors and interest holders" in the absence of the requested relief); *see also*

*In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) (recognizing irreparable harm in a situation where creditors continued to pursue their enforcement actions, which would "diminish the recovery available to other creditors and possibly wreck the [foreign debtor's] reorganization efforts."); *In re Netia Holdings S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) ("It is well established, at least in this district, that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."). That is precisely the risk here. If the 2021 Trustee or any other litigant were permitted to continue or commence individual enforcement actions in the United States, the ability of the Debtors to maximize and maintain value for distribution through the Brazilian EJ Proceeding would be severely undermined, and the value available for such distribution could be diminished by the costs of defending against lawsuits outside the centralized restructuring forum (Brazil). *See* Foreign Rep. Decl. ¶ 79.

29.     Further, as set forth above, the Trustee Litigation is at an advanced posture, and the Debtors face a risk of potential attachment or other post-judgment remedies against their assets (including the U.S. Bank Accounts) if that proceeding is left unstayed. Given the already limited revenues available to satisfy the Debtors' ongoing expenditures, the Debtors' U.S. Bank Accounts should be protected from adverse creditor actions and be available for use in the ordinary course. *Id.* ¶ 77. The Debtors would also be irreparably harmed if creditors were able to attach intangible property in the United States. *Id.* Any attachment could also undermine the contemplated *pari passu* treatment of affected creditors in the Brazilian EJ Proceeding, if individual creditors argue that their attachments entitle them to increased recoveries. If the attendant priorities in the Brazilian EJ Proceeding are threatened, the Debtors may not be able to move forward with their pre-negotiated and broadly supported restructuring at all. *Id.* ¶ 77.

30.     This consequence of adverse creditor actions is particularly serious because New York state law permits attachment on an *ex parte* basis. *See, e.g.*, N.Y. C.P.L.R. § 6211(a) (permitting attachments to be granted without notice to property owner); *see also* N.Y. C.P.L.R. § 6203. Moreover, once a judgment has been entered, New York state law permits a judgment creditor to serve a restraining notice on a judgment debtor or third-parties (*e.g.*, the judgment debtor's bank) that may have property of the judgment debtor. *See* N.Y. C.L.R. § 5222. Once a judgment debtor or third parties holding its assets are served with a restraining notice, the judgment debtor or third party cannot "make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated." N.Y. C.L.R. § 5222(b). As such, the Foreign Representative respectfully submits that it is imperative that the Court grant the Provisional Relief in order to maintain the status quo and prevent certain creditors from either obtaining *ex parte* attachment of property (and potentially arguing that they have obtained superior rights in such property) or proceeding to serve a restraining notice impeding the Debtors' use of their property while the Motion for Recognition is pending. *Id.* Otherwise, the Debtors may suffer irreparable harm to their ability to restructure their obligations for the equitable benefit of all creditors. *See, e.g., Order Granting Provisional Relief, Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016) (ECF No. 22); *Order Granting Provisional Relief, OAS S.A.*, No. 15-10937 (SMB) (Bankr. S.D.N.Y. Apr. 30, 2015) (ECF No. 33).

31.     Finally, forcing the Debtors to expend resources to continue litigating in New York Trial Court over matters that are likely to be stayed, and, the Foreign Representative believes, ultimately mooted by these Chapter 15 Cases would deplete the Debtors' already

limited resources, as well as distract the Debtors and their management from focusing on obtaining an approved plan in the Brazilian EJ Proceeding. *Id.*; *see Gercke*, 122 B.R. at 626 (finding in a case under former section 304 of the Bankruptcy Code that expending available resources on litigation outside the bankruptcy process "would constitute diversion of funds needed for the purpose of maximizing value," which "would constitute irreparable harm"). Courts have additionally held that having to fend off litigation while attempting to reorganize through a judicial proceeding constitutes irreparable harm. *See In re Alert Holdings, Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992) ("Where . . . the action sought to be enjoined would embarrass, burden, delay or otherwise impede the reorganization proceedings . . . the [U.S. b]ankruptcy [c]ourt may issue injunctive relief.").

### 3. The Balance of Harms Weighs in Favor of Granting the Provisional Relief

32.     The balance of harms also weighs in favor of granting the Provisional Relief and imposing the automatic stay. The stay will merely preserve the *status quo* on a temporary basis pending a determination by this Court of whether the Brazilian EJ Proceeding should be recognized. Critically, we understand that the 2021 Trustee, the main party affected by this requested provisional stay, does not at this time intend to oppose the requested relief absent direction from the 2021 Noteholders. The stay will not bar or otherwise limit parties in interest from participating in the Brazilian EJ Proceeding, nor otherwise affect the validity or priority of any creditor's asserted claim. Foreign Law Decl. ¶ 21. Each creditor's right to be heard in the Brazilian EJ Proceeding remains unaffected by the Provisional Relief. *Id.* Moreover, the requested stay will not preclude a creditor that feels unduly burdened by the Court's granting of the requested relief to seek to lift the stay for "cause." *See generally* 11 U.S.C. § 362(d). Instead, the Foreign Representative merely seeks to prevent creditors from commencing and continuing enforcement actions against the Debtors and their assets in the United States, as well as attempts

to circumvent the Brazilian EJ Proceeding, by provisionally applying section 362 of the Bankruptcy Code, pending a hearing on the Motion for Recognition, which has a high likelihood of success. In comparison, as explained above, the harm to the Debtors in the absence of the Provisional Relief would be severe and irreparable. Foreign Rep. Decl. ¶¶ 71, 76-80. Accordingly, the "balance of harms" prong is satisfied in favor of the requested relief.

### 4. The Public Interest Favors Granting the Requested Injunctive Relief

33. Because granting the Provisional Relief is consistent with the policy goals of chapter 15 by avoiding individual creditor actions, dissipation of the Debtors' estates, and the resulting inequitable distribution of property among creditors, the public interest also favors granting the relief sought herein. *See Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 459 (2d Cir. 1985) (noting in a case under former section 304 of the Bankruptcy Code the strong "public interest in the fair and efficient distribution of assets in a bankruptcy"). Moreover, the Provisional Relief promotes the purposes of chapter 15, including: (a) the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the debtor"; (b) "protection and maximization of the value of a debtor's assets"; (c) "facilitation of the rescue of financially troubled businesses, thereby protecting investments and preserving employment"; and (d) promotion of cooperation between the courts in the United States and in foreign jurisdictions involved in cross-border insolvency cases. 11 U.S.C. §§ 1501(a), 1525.

34. This Court should also grant the Provisional Relief as an exercise of comity. Chapter 15 of the Bankruptcy Code is designed to, among other things, protect and maximize the value of a foreign debtor's assets and assist foreign representatives—such as the Foreign Representative—in the performance of their duties. Consistent with these principles, the Court should grant the Provisional Relief requested in Proposed Order since doing so would be

consistent with the Brazilian EJ Stay already in effect. Indeed, granting a stay with respect to the Debtors' U.S. assets achieves the principles of comity that are the bedrock purpose of chapter 15. *See In re Rede Energia S.A.*, 515 B.R. 69, 89 (Bankr. S.D.N.Y 2014) ("A central tenant of chapter 15 is the importance of comity in cross-border insolvency proceedings."); *Moyal v. Münsterland Gruppe GmbH & Co. KG*, 539 F. Supp. 3d 305 (S.D.N.Y. 2021) (dismissing case in the absence of Chapter 15 recognition due to the pendency of insolvency proceedings in Germany, where bankruptcy proceeding automatically stayed all previously filed actions against defendant and where German insolvency laws comported with due process and fairly treated claims of U.S. creditors); *see also id.* at 308 (referring to foreign bankruptcy proceedings as a "discrete category of foreign litigation" that "generally requir[e] the dismissal of parallel district court actions" and observing that "[a] foreign nation's interest in the 'equitable and orderly distribution of a debtor's property' is an interest deserving of particular respect and deference") (quoting *Royal & Sun Alliance Ins. Co. of Canada.*, 466 F.3d 88 at 92-93 (2nd Cir. 2006)).

## C. All Parties are Sufficiently Protected

35. As required under section 1522(a) of the Bankruptcy Code, all parties are "sufficiently protected" for this Court to grant the Provisional Relief. 11 U.S.C. §1522(a); *see SPhinX, Ltd.*, 351 B.R. 103 at 112-13 (Bankr. S.D.N.Y 2006) (holding that section 1522 provides that the Court may grant or modify interim relief under section 1519 only if the interests of all parties are "sufficiently protected"). Relief under section 1519 of the Bankruptcy Code should be denied for a lack of sufficient protection only "if it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." H.R. Rep. No. 109-31, pt.1, at 116 (2005). A determination of sufficient protection requires a balancing of the respective parties' interests. *See CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should

tailor relief balancing the interest of the foreign representative and those affected by the relief.").[11]

36. Here, parties are well protected. As shown above, the benefits to the Debtors and all parties in interest significantly outweigh any hardship to any party. To the contrary, the Provisional Relief will merely preserve the status quo for all parties pending the recognition hearing. The rights of the 2021 Trustee in particular are sufficiently protected, because the 2021 Trustee and/or its constituent noteholders will be able to participate in the Brazilian EJ Proceeding, and the matter at the core of the Trustee Litigation—namely the claim for collection of payment of the 2021 Notes—will be specifically addressed by the Brazilian EJ Proceeding, which will provide for a comprehensive restructuring of all Notes claims. Moreover, because the EJ Plan, by its terms, requires an order granting effect in the United States, the Brazilian EJ Proceeding will necessarily be subject to further proceedings before this Court. Foreign Rep. Decl. ¶ 54. Parties affected by the Provisional Relief will therefore still have access to courts in both Brazil and the United States in connection with the restructuring.

## D.    No Security Is Required

37. Security is not required for the Provisional Relief in accordance with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). *See* Bank. R. 7065 ("[A] temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)['s requirement to give security]"). In any event, requiring security would be unwarranted in the present circumstances as the Debtors'

---

[11] The standard for determining whether the parties are sufficiently protected under section 1522(a) of the Bankruptcy Code thus mirrors the balance of hardships inquiry under the general standards for injunctive relief discussed above.

primary assets are under the jurisdiction of the Brazilian Court and the Provisional Relief would last only until this Court's ruling on the Motion for Recognition. *See* 11 U.S.C. § 1520(a)(1).[12]

**E.     Requirements of Bankruptcy Rule 1007(a)(4)(B) Should Be Waived**

38.     Contemporaneously with the filing of this Motion, the Foreign Representative filed the *Lists Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1 and Local Rule 1007-3* (the "Bankruptcy Disclosures").   Among other things, Bankruptcy Rule 1007(a)(4)(B) requires a list of all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code, unless the court orders otherwise.  As set forth herein and as reflected in the Bankruptcy Disclosures, the Foreign Representative seeks provisional application of the automatic stay under section 362 of the Bankruptcy Code that would specifically, but not exclusively, affect the 2021 Trustee.  The relief sought herein could likewise affect other parties to the extent such parties could seek to commence litigation against the Debtors or enforce against their property.

39.     The disclosure provided in the Rule 1007 Statement with respect to this Motion is sufficient to satisfy Bankruptcy Rule 1007(a)(4)(b).  However, in an abundance of caution, and given that other, unknown parties may be affected, the Foreign Representative also requests that the Court waive any further requirement under Rule 1007(a)(4)(B) with respect to the provisional relief sought by this Motion.

**NOTICE**

40.     In accordance with Rule 2002(q) of the Bankruptcy Rules, the Foreign Representative will provide notice of this Motion to (a) the Debtors; (b) the Office of the United

---

[12] Courts have granted waivers of security provisions of Bankruptcy Rule 65(c) in chapter 15 cases. *See, e.g.*, *In re Inverness Distrib. Ltd.*, No. 11-12106 (SCC) (Bankr. S.D.N.Y. May 18, 2011) (ECF No. 21) at 5 ("Pursuant to Bankruptcy Rule 7065, the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure are waived.").

States Trustee for Region 2 (the "U.S. Trustee"); and (c) the parties entitled to notice set forth in the *Motion Pursuant to Fed. R. Bankr. 2002 and 9007 Requesting Entry of Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice*, filed contemporaneously herewith. Draft copies of this Motion were also shared with counsel to the 2021 Trustee, counsel to the Ad Hoc Group, and the U.S. Trustee prior to filing this Motion. The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

41.     No previous request for the relief sought herein has been made by the Foreign Representative to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE the Foreign Representatives respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:    October 31, 2022
          New York, New York

                              */s/ Timothy Graulich*
                              DAVIS POLK & WARDWELL LLP
                              450 Lexington Avenue
                              New York, New York 10017
                              Telephone: (212) 450-4000
                              Facsimile: (212) 701-5800
                              Timothy Graulich, Esq.
                              James I. McClammy, Esq.
                              David Schiff, Esq.
                              Joshua Sturm, Esq.

                              *Counsel to the Foreign Representative*

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**Andrade Gutierrez Engenharia S.A.,**[1]<br><br>    **Debtors in a Foreign Proceeding** | **Chapter 15**<br><br>**Case No. 22-11425 (MG)**<br><br>**(Joint Administration Pending)** |

## ORDER GRANTING MOTION FOR PROVISIONAL RELIEF

Upon the *Motion for Provisional Relief Pursuant to 11 U.S.C. §§ 1519, 1521(a)(7), 105(a), and 362* (the "Motion")[2] of Gustavo Braga Mercher Coutinho (the "Foreign Representative"), the authorized foreign representative in respect of the extrajudicial reorganization (*recuperação extrajudicial* or "EJ") proceeding (the "Brazilian EJ Proceeding") of Andrade Gutierrez Engenharia S.A. ("AGE") and its affiliated debtors, AG Construções e Serviços S.A. ("AGCS"), Andrade Gutierrez Investimentos em Engenharia S.A. ("AGIE"), Andrade Gutierrez International S.A. ("AGI"), and Zagope Sgps, S.A. ("Zagope") (collectively, the "Debtors") in the 1ˢᵗ Corporate Court of the Judicial Venue of Belo Horizonte (the "Brazilian Court") pursuant to Brazilian Federal Law No. 11,101 of February 9, 2005 (as amended, the "Brazilian Bankruptcy Law"), of the laws of the Federative Republic of Brazil ("Brazil"), for entry of an order (this "Order") granting the provisional relief requested in the Motion (together, the "Provisional Relief"); and it appearing that this Court has jurisdiction to consider the Motion pursuant to sections 157 and 1334 of title 28 of the United States Code, and the Amended

---

[1] The debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with each Debtor's tax identification or corporate registry number, are: Andrade Gutierrez Engenharia S.A. (Brazil – No. 17.262.213/0001-94) ("AGE"), AG Construções e Serviços S.A. (Brazil – No. 39.469.291/0001-05) ("AGCS"), Andrade Gutierrez Investimentos em Engenharia S.A. (Brazil – No. 17.027.611/0001-26) ("AGIE"), Andrade Gutierrez International S.A. (Brazil – No. 20.253.172/0001-84) ("AGI"), and Zagope Sgps, S.A. (Portugal – No. 507403177) ("Zagope").

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

Standing Order of Reference dated January 31, 2012, Reference M-431, <u>In re Standing Order of Reference Re: Title 11</u>, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.) (the "<u>Amended Standing Order</u>"); and this Court having considered the (a) Motion, (b) Supporting Documents, and (c) the statements of counsel in support of the Motion at a hearing before this Court (the "<u>Hearing</u>"); and appropriate and timely notice of the filing of the Motion and the Hearing having been given; and no other or further notice being necessary or required; and after due deliberation and sufficient cause appearing therefor;

THIS COURT HEREBY FINDS AND DETERMINES THAT:

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Motion is granted as provided herein and any objections thereto filed or stated on the record at the Hearing are overruled.

C.      The Court has jurisdiction over this matter pursuant to sections 157 and 1334 of title 28 of the United States Code and the Amended Standing Order.  This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United States Code.

D.      Venue is proper in this district pursuant to sections 1409(a) and 1410 of title 28 of the United States Code.

E.      The statutory basis for the relief requested consists of sections 1519, 1521(a)(7), 105(a), and 362 of the Bankruptcy Code.

F.      The Brazilian EJ Proceeding is pending in the **Brazilian Court** and the Foreign Representative is an individual, which is included in the term "person," 11 U.S.C. § 101(41), who, with respect to each of the Debtors, has been (a) appointed to act as the foreign representative (within the meaning of Bankruptcy Code section 101(24)) of the Brazilian EJ Proceeding for such Debtors for purposes of these Chapter 15 Cases and (b) authorized to commence these Chapter 15 Cases with respect to such Debtors.

G.      On October 31, 2022 (the "<u>Chapter 15 Petition Date</u>"), the Foreign Representative commenced these Chapter 15 Cases under chapter 15 of the Bankruptcy Code with respect to each of the Debtors.

H.      The Foreign Representative is not required to commence an adversary proceeding to seek the relief requested in the Motion.

I.      The Court is authorized to enter the provisional relief sought by the Foreign Representative in the Motion under sections 1519 and 105(a) of the Bankruptcy Code.

J.      The Provisional Relief is urgently needed to protect the assets of the Debtors and the interests of their creditors as required by 11 U.S.C. § 1519(a).

K.      The Provisional Relief is warranted under 11 U.S.C. § 1519(e).

L.      The interests of the Debtors' creditors and other interested entities, including the Debtors, are sufficiently protected in the Court's grant of the Provisional Relief, as required by 11 U.S.C. § 1522(a).

M.      Based on the pleadings filed to date, the Court concludes that the Foreign Representative has demonstrated a substantial likelihood of success on the merits of the Motion for Recognition.

N.      The Foreign Representative has demonstrated that there is a material risk that the

Debtors will suffer irreparable harm in the absence of the relief sought in the Motion.

O.      For purposes of this Order and the relief granted herein, the balance of harms favors granting the Provisional Relief.

P.      For purposes of this Order and the relief granted herein, the relief granted serves the public interest.

Q.      Due to the nature of the relief requested, no security is required under Rule 65(c) of the Federal Rules of Civil Procedure, as made applicable in chapter 15 cases by Bankruptcy Rule 7065, if applicable, or otherwise.

R.      Appropriate notice of the filing of, and the Hearing on, the Motion was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

**NOW THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.      The Provisional Relief is granted on an interim basis pending final hearing on recognition of the Brazilian EJ Proceeding and ruling by the Court on the Motion for Recognition with respect to each of the Debtors.

2.      Section 362 of the Bankruptcy Code shall apply with respect to each of the Debtors and their property within the territorial jurisdiction of the United States including, without limitation, to stay the continuation of the Trustee Litigation.

3.      Notwithstanding anything to the contrary contained herein, nothing in this Order serves to grant any injunction that is prohibited under section 1519(d) of the Bankruptcy Code.

4.      This Order is without prejudice to the right of the Foreign Representative to seek additional relief under applicable provisions of the Bankruptcy Code (including, without limitation, section 1519 of the Bankruptcy Code) and without prejudice to the rights of the Debtors to seek any remedy or to pursue any further relief.

5.      This Order is without prejudice to the right of any party to seek relief from the

stay provided by this Order or to challenge or oppose the Motion for Recognition or any other motion or relief sought by the Foreign Representative in these Chapter 15 Cases.

6. Notwithstanding anything to the contrary contained herein or provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon entry; (b) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; (c) the Foreign Representative is authorized and empowered, and may, in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order; and (d) for the avoidance of doubt, and without limiting the effects of any future relief that may be granted by the Court, nothing in this Order shall restrict the Debtors' or the Foreign Representative's ability to use, access, administer or realize the Debtors' property within the territorial jurisdiction of the United States.

7. The requirements set forth in Bankruptcy Rule 1007(a)(4)(B) are waived with respect to the Provisional Relief, to the extent such requirements have not already been satisfied by the Bankruptcy Disclosures.

8. This Order shall remain in full force and effect from the date hereof until the date on which a final determination is made by this Court with respect to the Motion for Recognition and the request for recognition of the Brazilian EJ Proceeding with respect to each of the Debtors, and an order is entered in these Chapter 15 Cases giving effect to such determination.

9. This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order.

Dated: [·], 2022
     New York New York

                                                                   _____
                                                                   UNITED STATES BANKRUPTCY JUDGE